Mr. Singh was denied asylum, withholding of removal, and relief under the Convention Against Torture. I believe the judge based her adverse credibility finding on three main issues. Excuse me. Could you speak somewhat louder into the microphone? Certainly. I apologize. I believe the judge made her decision based on three main issues centering specifically around an arrest that took place in 1999. She found that a speech that he had claimed he was going to make would have taken place on a date other than the date that he had indicated. She also found that he was arrested, but the reasons that he gave why the police arrested him were contradictory. And finally, she found that an event that took place in the year 2000 was somewhat contradicted by his testimony that he had been arrested in 1999. With respect to the ceremony, the year 1999, she found that government evidence, specifically Exhibit 9 at page 226 of the Administrative Record, contradicted Mr. Singh's claim that he was to give a speech. He had testified the speech would take place on either April 13th or April 14th, that being Baisakhi Day, and the government put forward evidence that the speech was taking place actually on April 8th. The judge found that that was incredible because there was no other evidence to indicate that a speech would have taken place on April 13th, as Mr. Singh had indicated. The record reflects, however, that Mr. Singh testified prior to being confronted with that evidence that he was going to give a speech on a particular stage known as the Darbar stage, and that was a stage set up by his party for his party members. The events calendar that the government proffered only lists events that were scheduled on the official calendar. Mr. Singh testified that his event was to take place, if you will, on an unofficial event. It was outside of the Gurdwara. It was not part of the main calendar. The second issue was the arrest, the actual arrest that took place in 1999, April. There came a point where the immigration judge felt that Mr. Singh had testified that the police arrested him so that he would be prevented from – I'm sorry. The police arrested him so that he would be an example, so that other individuals would not come forward and participate politically as he had done. She then found that Mr. Singh changed his testimony and said that he had been arrested so that he would be prevented from speaking about this. She found that to be a contradiction. I believe the record reflects that Mr. Singh only mentioned that if he were arrested and if that arrest were made public, other individuals would be intimidated or placed in fear and would therefore refrain from – Counsel, we had two different – he related two different arrests. Yes. And one of them was April of 1999. When was the other one? September of 1997. In September of 1997. Yes. And he testified that after one of these, the police told him not to tell. That's correct. Was that the 1997 arrest? That was the 1997. 1999. And he said that the police told him in 1997 they effectively wanted him to let people know not to do this or they would – they would suffer the same fate that he had. Is that right? Well, I believe what he – what he testified to was if it was made known that he had been arrested, other people would – would essentially be afraid from coming forward. But he testified consistently and repeatedly that he was told not to mention anything about this. Now, that's in 99. That's correct. Okay. And what was he told in 97? 97, I believe he was simply – he was released on a bribe. And I'm not clear if he was told whether or not to go forward and speak. But I thought that was the contradiction was that – was that the police told him to tell people after the – after the 97 – not so much to tell people, but, you know, to sort of say, you know, go back, show your folks this is what happens when you behave this way. I believe what happened during the 97 arrest was he was told – he was told if you continue, this is what happens. I believe during questioning from both the IJA and on cross-examination, the point came up as to what the police motivation was for arresting him in 99. And he mentioned – he conceded that if people were made aware of what had happened to him in 97, then most likely they would be afraid from coming forward and doing the same types of activities. Right. I don't believe he ever actually testified that the police – Was there anything – was there anything as to which Mr. Singh testified that was contradictory about those two arrests? Or is the IJA's point that the – you said the police told you two different things, you know, once in 1997 and once in 99, as to what they wanted you to do. And those two things are different. And therefore, you must be lying about them. I believe that's what the IJA believed. But I don't believe Mr. Singh. That would require Mr. Singh, then, to be responsible for inconsistencies in what the police told him. That's true. But I don't believe that Mr. Singh was actually told that he's to go forward and essentially spread this news about what happened. It was during questioning that he simply – he conceded if people were made aware of this, that I'd been arrested and mistreated in such a fashion, it would probably cause people to refrain from participating like this in the future. And from that point on, then, the questioning was going on repeatedly as to why he would say, on the one hand, he was told not to publicize this arrest, and on the other hand, he was told he was arrested because he was being prevented from publicizing the arrest. So I don't believe it was a contradiction or a inconsistency on the part of Mr. Singh. I believe it was a misunderstanding or mischaracterization of his testimony. I think the third point that the I.J. brought up was the fact that Mr. Singh was arrested in 1999 and prevented from giving his speech at the Baisakhi event of that year. But in the year 2000, he was allowed to go forward and give his speech. And there was a question as to why, as the I.J. put it, the police would not dare to interfere with the 2000 event, and yet they would arrest him from the 1999 event. I think, again, that's sort of a misunderstanding of Mr. Singh's testimony. Mr. Singh was testifying that he was stopped by arrest from appearing in the 1999 event. He then went on to say that the police would not dare to try and stop the event of 2000. And I think those are two different things. On the one hand, you have an individual who was arrested and prevented from appearing at his speech. But in the year 2000, he made the speech. That does not mean that the police were attempting to stop the events of 1999. In fact, the government brought forward a lot of evidence that the event was very well attended in 1999. The police had their own participation. In fact, the government did. And I think that's consistent with the government allowing the event to take place in the year 2000. The difference is they were not able to arrest Mr. Singh prior to his giving the speech in 2000. He did testify, however, that almost immediately after the speech, they did raid his home, actually two family homes, searching for him after he gave the speech. So I don't think that the inconsistencies or contradictions that the I.J. pointed out actually are the responsibility or can be attributed to Mr. Singh. I believe it's more in a situation where the I.J. misunderstood his testimony and misunderstood some of the facts within that testimony. Okay. You wish to reserve the remainder of your time? Okay. From the government. May it please the Court, I am Blair O'Connor, again, on behalf of the Attorney General. Your Honors, the evidence of record fails to compel the conclusion that Petitioner presented credible evidence to support his eligibility for asylum withholding and removal. Now, the adverse credibility determination was essentially focused on Petitioner's inconsistencies and implausibilities with respect to his second arrest. When he was initially asked about this arrest, he said the police took him, arrested him at his home because he was encouraging people to attend a 300th birthday celebration of Sikhism in a nearby village. He later stated under cross-examination that he was going to have a big part in that celebration at Annapur Sabh by giving a speech and talking about the injustice of his first arrest. When asked why he would be singled out among the hundreds of other speakers and presenters at this celebration, he testified that the police wanted to use him as an example of people to discourage them from participating in such rallies. Why this was contradictory was because it contradicted his testimony that the police warned him not to tell anyone about the second arrest and what happened to him during that arrest. Counsel, does the government – I'm sorry. Go ahead. No, please. Does the government dispute the fact that this man was arrested in 1997 and 1999? Well, again, we do because the immigration judge found that his testimony regarding the whole circumstances, the totality of circumstances – I understand they dispute the circumstances, but do they dispute the fact that he was, in fact, arrested? We do, Your Honor. We don't know if that second arrest occurred. What about the first one? Again, the immigration judge found that because of the implausibility of the second arrest, that could taint the first arrest, but she didn't make an alternative finding that even assuming the first arrest happened, it didn't establish eligibility for asylum. Do they dispute the fact that he claimed he was beaten when he was arrested the first time? Does the government dispute that? If the arrest occurred, then we would – again, Aja did make an alternative finding assuming everything he testified to about the first arrest, that it did happen, it still would not establish eligibility for asylum. Okay. So she did not dispute that? Well, again, her decision says that because of all the implausibilities of the second arrest and because he said that the first arrest was a predicate for the second, that it did call into question whether or not the first arrest happened. I understand. But ultimately, we're talking about burdens back and forth here. I don't remember seeing anything in the record where there was a specific refutation about the 1997 arrest. Are you aware of any? No, Your Honor. Okay. Or the beating? No, Your Honor. Any question that this man belonged to one of the subsects of Sikhism that is associated with, shall I say, militancy? That he was associated. But, I mean, there was a question about his level of association, whether or not he was a high-level member or a low-level member. I understand. But, I mean, the reality is that his statement is that he was clearly an activist, I'll call him. Any doubt about that? No. He encouraged people to participate, collected funds for people to hold the rallies and encouraged them to go. What does the country report, if it's in the record in this case, to your knowledge, say about this particular group of Sikhs, if it says anything? The State Department report says that as of the time of his asylum hearing, that the party was doing very well. They were a mainstream party in India with representation in the government. Even, I know the big one, but I'm talking about the subsect. It did refer to his subsect, Your Honor. It did refer to his subsect. It did, yes. In fact, on page 342 of the administrative record, the State Department reported that membership in petitioner's subsect of political party was not a ground for anticipating persecution or mistreatment in India. And, again, that gets to the alternative IJ finding, that even assuming that the first arrest occurred, there were changed country conditions with respect to his political party in India and that the government rebutted that presumption by showing that a fear of future persecution is not objectively reasonable. Is the Prime Minister today a Sikh? I believe he – Your Honor, I have to – I don't – I'm not sure. I know there was a Sikh who was Prime Minister at one time. I don't know if that's present day. Mr. O'Connor, I did have a couple of questions. Yes, Your Honor. May I say you come through very well. I can understand you clearly and you're very well prepared. But on the inconsistencies, he tells the police in 97 want him to publicize his bad treatment. In 99, they don't. Well, the political situation had changed, hadn't it? In 99, the government of India was trying to bring everybody in. So naturally, there would be a different motive of what the police would want to happen in 99. Doesn't that make sense? It does, Your Honor, but I don't recall the petitioner testifying that police told him to publicize the 97 arrest. I mean, I think all he said was that they told him this is what's going to happen to you when you participate in rallies. Oh, yeah. Anyway, there's no – I understand. There's no inconsistency with what he said about 97 police and about 99 police. It's just different situations. Yes, Your Honor, but there is some inconsistencies in that. There was evidence that showed that with respect to the 300th birthday celebration, there was a significant police presence that was actually participating in that celebration. Well, there is. But what it seemed to me on review is that the immigration judge did not understand that there was a militant separatist group to which this man belonged. They weren't participating. The mainline Sikhs had given up. They wanted peace with India. But these people did not. And she's fused them all together. And I don't see that you're doing any better, to tell you the truth. I think you have to know more about what the situation is among these different Sikh groups. You've got one sort of holdout group, a splinter. I understand, Your Honor. And I'd like to make one point on that, though. At one point, D.I.J. did recognize in one of the documentary evidence that there was a prominent member of the splinter group, the activist group, that even made a speech during the 300th birthday celebration, where he did support in favor of Khalistan. And her question to the petitioner was, why wouldn't the police arrest that individual who was out there in front of the public, in front of hundreds of people, advocating this, instead of you who was supposed to make a small speech on the side? And you didn't have a reasonable explanation for that. Well, I don't blame him. How can you speculate about a police motive? If you want my speculation, the police would not arrest the man who was the leader. That would cause a disturbance, picked on some smaller guy. But, I mean, who knows? I mean, that's pure speculation. Yes, Your Honor. And, again, but that's where, I mean, his ability to try to answer that question is what resulted in a lot of this confusion, because his repeated answer to that question was that, you know, the police wanted to use me as an example to show everyone else what would happen when you participated in these types of rallies. You know, it's a frequent ‑‑ I've read enough about persecutions of different ages to say that's a frequent technique of government. You don't take the big guy. You take someone down the line and really make an example of them. I understand, Your Honor. Again, but, again, even assuming that there was instances of past persecution, the IJA did have the alternative finding that at the time of this, the documentary evidence at the time of the asylum hearing did show that his particular subgroup was doing fine in India and that I was not a basis to fear future persecution at the time of his asylum hearing. And the government would rely on, if the court does have troubles with the adverse credibility ruling, on that alternative finding. Do you have a sight in the record you could give to us from the country report or something that would substantiate what you just said? Because at least my understanding from the record of my own just general knowledge is the same as Judge Noonan's about this subgroup. I think they remain implacably hostile to the Indian government. Do you have anything that would substantiate your position? If I may have a minute, Your Honor. Please. Thank you. On page 342 of the record, which is an addendum, a 1997 addendum to the State Department report, that indicates that membership in Mann's faction of the Akali Dao, which is Armistar, which was his particular subgroup, membership in that is thus not a ground for anticipating prosecution or mistreatment in India. Well, I understand that. That's just a conclusion. But what does it say about the interrelationship of that group and the government? That's just a conclusory statement that you read there that's kind of like part of your brief. Well, where is there a fact, an allegation of fact in the country report or some other authoritative information or quasi-authoritative information that says that this particular subgroup, a militant subgroup that is implacably opposed by religious creed, as I understand it, to the Indian government has changed its views and is now passed specifically vis-a-vis the government. Okay. The page prior to that, 340, does indicate that one member of that party won a place in the 117-seat legislature, one member of that subgroup. And, again, we would also rely on the fact that Petitioner was not a high-level member of this subgroup. He was a relatively low-level member. And there is no evidence that he showed that he personally would be wondered against him or that he would be He was arrested in 1997 and beaten. At least the uncontested record shows that. Yes, Your Honor. Four years after the silent hearing. Okay. Thank you, Your Honors. Thank you. I would just reiterate once again that at no point did Mr. Singh testify that the police had requested or instructed him to go publicly and publicize his first arrest. That was a misunderstanding on behalf of the IJ. Secondly, the claim that there's no well-founded fear of persecution, when the IJ made that alternative finding, she made that based on having discounted the second arrest. If this Court were to find that Mr. Singh was credible, I believe the two arrests that he suffered, I believe the two raids that his family suffered after his second arrest or second attempted arrest would substantiate that there is, in fact, a well-founded fear. Your Honor had requested or had asked whether, in fact, there is a Sikh prime minister at this point. There is, Manmohan Singh. I think if this Court were to find that Mr. Singh were credible, the proper thing would actually be to remand because there have been significant country conditions changes. Both there is a Sikh prime minister, and, in fact, Mr. Man himself has been arrested since the time. If we were inclined to grant the petition, counsel, what is it you want us to do? I think in fairness there, because there have been so many changes in country conditions, a remand would be in order. So you would remand to the BIA for consideration of changed country conditions? I don't think so. Thank you. Thank you, counsel. I thank both counsel for the argument. The next case on the calendar, Jaideep Singh v. Gonzalez, is submitted on the briefs.
judges: Noonan, Bybee, M.smith